McCLANAHAN ET AL., APPELLANTS, *v.* McCLANAHAN ET AL., APPELLEES.

(No. 3731—Decided July 1, 1946.)

*Mr. William A. Slater,* for appellants.
*Messrs. Gottwald, Hershey & Hatch,* for appellees.

MONTGOMERY, J.  The appeal to this court is on questions of law and fact, and is submitted upon a transcript of the evidence taken in the Common Pleas Court and a little additional evidence taken in this court.

The essential relief sought by plaintiffs, appellants herein, is an accounting.  The defense is essentially twofold.  First, it is claimed that there is no proof of a contract between the parties sufficient to justify the granting of any relief; and, second, that the purpose of the principal plaintiff, Earl McClanahan, in entering into whatever arrangement was made, was to hinder, delay and defraud his creditors, and, not coming into court with clean hands, he cannot ask for any relief.

The record shows a maze of contradictions and also of irrelevancies.  The two principals are brothers. The conduct of neither of them would measure up to any high test of business integrity, and the testimony

of neither of them justifies any claim of complete reliability.

The inconsistencies in the pleadings of plaintiffs and many of the inconsistencies in the testimony of each of the brothers may be disregarded, however, in view of our conclusions as to the ultimate facts and the law applicable thereto. Those conclusions seem to us to be inescapable, and a recital of all the claims and of the details of the various maneuvers would answer no useful purpose. As to the facts, we limit ourselves to a statement of what we regard as basic and decisive.

The plaintiff Earl McClanahan had started a small jewelry store and watch repair shop in Akron. By 1934 he had assets which he claims were worth approximately $4,000, but he could not meet the claims of creditors against him, and for practical purposes was insolvent. He induced James McClanahan, also insolvent, to come from West Virginia to Akron and to join him in the business.

After a short time they agreed upon the formation of a corporation, and we find, as the Common Pleas Court found, "that there was an agreement to divide the stock fifty-fifty." Two hundred and fifty shares were authorized. One hundred shares were issued promptly to James or as he directed. Later, another fifty shares were similarly issued. None was ever issued to or for Earl. His shares were not to be issued until he should settle with his creditors.

Some years later Earl did settle with his creditors for approximately ten per cent of the claims, and in making some of these settlements he made false statements as to his financial ability, and in at least one instance made a false statement under oath.

In the meantime, the business had become valuable, and when James, by virtue of the stock he held and his claim to sole ownership, excluded Earl from participa-

tion in the business, it was worth $40,000. The chief producer of the assets was a contract procured by Earl from the General·Electric Company for the sale of its products.

In other words, Earl had the business. He is entitled to chief credit for making the business profitable. He brought his then impecunious brother into the business. That brother made the contribution expected of him, but the latter now seeks to exclude from participation in the business or its profits the man chiefly responsible for both.

The reason for such attempted exclusion, other than the indefiniteness of the contract, which we have hereinbefore resolved, is that Earl, in entering into the arrangement, did so for the purpose of defrauding his creditors in whole or in part.

Is such a defense available to the brother making the claim? As we see it, that is the question for us to decide, in view of our stated conclusions as to the facts.

Early in our consideration of the case, the thought came to us that for James to succeed on such a claim would be a gross example of unjust enrichment. What is "unjust enrichment?"

43 Words and Phrases, 272, suggests three definitions, the substance of which is that one is unjustly enriched if the retention of the benefit would be unjust; that one should not be allowed to profit or enrich himself inequitably at another's expense; and that there may be a recovery where the receipt by one person from another of a benefit and the retention of that benefit would be unjust.

An interesting suggestion concerning this doctrine appears in 66 Corpus Juris, 32, wherein it is described as a phrase much used to designate a principle which lies at the foundation of the great bulk of *quasi*-con-

tracts—that one shall not unjustly enrich himself at the expense of another.

We come now to the questions whether the so-called "clean hands" doctrine is applicable in the instant case and whether, where one has a fault attached to him in a transaction, he can still claim relief against an unjust claim asserted by another.

In the course of the opinion in the case of *Pride* v. *Andrew,* 51 Ohio St., 405, 414, 38 N. E., 84, where the court discussed the proposition that neither party to a fraudulent conveyance can be aided in a court of justice, there is added this interesting proposition:

"There are cases, however, seemingly at variance with this rule, in which aid was extended to grantors who were *in delicto,* but not *in pari delicto* with the grantees. But these cases are exceptions to the well-defined and almost universal rule, and rest upon facts not existing in the case before us. Where there are different degrees of guilt as between the parties to the fraudulent or illegal transaction, it was said in *Roman* v. *Mali,* 42 Md., 513, that as an exception to the general rule, if one party act under circumstances of oppression, imposition, undue influence, or at great disadvantage with the other party concerned, so that it appears that his guilt is subordinate to that of the defendant, the court in such case will relieve."

In 30 Corpus Juris Secundum, Equity, Section 93, referring to this proposition, this statement is made:

"It means that equity refuses to lend its aid in any manner to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief."

In the instant case, the inequitable conduct of the plaintiff Earl McClanahan had nothing to do with his connection with the defendant James McClanahan, or with the claim which the former makes against the

latter. And under the subject of Equity in 19 American Jurisprudence, Section 473, we find this statement:

"The applicability of the maxim, 'he who comes into equity must come with clean hands,' depends upon the connection between the complainant's iniquitous acts and the defendant's conduct which the complainant relies upon as establishing his cause of action. Relief is not to be denied because of general iniquitous conduct on the part of the complainant or because of the latter's wrongdoing in the course of a transaction between him and a third person."

And in Section 474, *Id.*, we find this:

"If the alleged wrongful conduct of the complainant appears not to have injured, damaged, or prejudiced the defendant, the maxim may not be successfully invoked."

In 4 Pomeroy's Equity Jurisprudence (5 Ed.), Section 1047, in a discussion of constructive trusts, this statement appears:

"By the well-settled doctrines of equity, a constructive trust arises whenever one party has obtained money which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it * * *."

And the Ohio rule, as stated in 27 Ohio Jurisprudence, Money Received, Section 2, is:

"Where one receives money that in equity and good conscience belongs to another, the latter may recover it as money received to his use. In other words, 'the action lies in every instance where one has come into possession of money which should in good conscience be refunded to another.' "

Of course, law digests do not constitute the best authority for any proposition, but we have checked all the references hereinbefore made and they are justi-

fied by virtue of their annotations, and there are numerous decided cases referred to in the various digests, which sustain all that has been quoted herein.

We direct attention in particular to one case—that of *Langley* v. *Devlin*, 95 Wash., 171, 163 P., 395— and to the last paragraph of the syllabus therein, which is:

"In an action to recover an interest in corporate stock, secretly retained by defendants out of the purchase price on the sale of plaintiff's stock, it is no defense that the plaintiffs and defendants did not deal fairly with third parties who were interested in the sale and that plaintiffs did not make all persons interested in the subject matter parties to the suit; since the principle that he who comes into equity must come with clean hands does not apply to defeat the enforcement of a contract because a third party was defrauded, where the defendants first invited the fraud, the third party is not complaining but made common cause with the plaintiff, and there is no evil in the subject matter of the contract."

Finally, it is our conclusion, and we must state, that James McClanahan, being in no sense connected with the people whom he claims were defrauded or with the alleged attempt to defraud them, and having profited as hereinbefore stated, is in no position to invoke the doctrine which he claims as an aid to him in retaining this property. And in this conclusion, no injustice is done him.

It follows that there may be a decree for the plaintiffs, granting their right to an accounting from the defendants, and counsel for the plaintiffs may draw an entry accordingly.

*Decree accordingly.*

DOYLE, P. J., and STEVENS, J., concur.

MONTGOMERY, J., of the Fifth Appellate District, sitting by designation in the Ninth Appellate District.