OPINION
{¶ 1} This case involves a dispute over a driveway easement. The matter was appealed twice to this Court previously and dismissed both times for lack of a final appealable order. It appears that all remaining issues, including the issue of damages, have now been ruled upon by the Mahoning County Court of Common Pleas, and that this case is now properly on appeal.
 {¶ 2} The original complaint was filed on December 30, 1996. Appellees Christopher and Susan Collins alleged that Appellants William and Jeanie Moran refused to allow the Collinses access to a 15-foot right of way for ingress and egress across the northern border of the Morans' property in Canfield. The Collinses own the lot immediately to the north of the Morans' property. Appellees alleged that the Morans removed all the gravel from the right of way and placed dirt and plantings in the right of way to prevent it from being used. Appellees also alleged that Mr. Moran wrongfully reported Mr. Collins to the Canfield police as a trespasser, and it appears that Mr. Collins was eventually acquitted of the charge. Appellees requested a permanent injunction, monetary damages arising from the criminal trespass charge, damages for the cost of adding gravel to the right of way, and other damages for losses arising from the blocked right of way.
 {¶ 3} Appellants denied the allegations and also filed a counterclaim for damages which were caused when Mr. Collins drove a backhoe onto the right of way and injured some shrubs.
 {¶ 4} The case was assigned to a magistrate. A hearing was held on May 2, 1997, during which eleven people testified. The evidence revealed that both parties owned lots fronting on the east side of Hood Drive, a street running north and south in Canfield. The Collinses own Lot No. 1099. Immediately south of that lot is the Morans' property, Lot No. 2130.
 {¶ 5} The magistrate found that a 15-foot right of way was created in 1894 by S.S. and Linda Porter, who granted the right of way to Leah Rogers. (Plaintiff's Exh. 20.) In addition, the Porters conveyed several parcels of land to James Chambers in 1904, reserving a 15-foot right of way to Leah Rogers. James Chambers is a predecessor in title to the Morans' property. Mr. Moran testified that he acquired the property in 1992, built a home on it, and moved into the house in November 1992. (Tr., p. 17.)
 {¶ 6} Mr. Moran testified that he knew there was a path across the property, which was partially blacktopped and partially covered with gravel. Mr. Moran had a survey done of the property before he built his house that showed the right of way. There was testimony that the right of way across the Morans' property was in use since at least 1953 for both vehicular and pedestrian traffic. (Tr., pp. 37-39.)
 {¶ 7} The magistrate found that the right of way was recorded in a number of official records, including a plat map from 1938, a replat map from 1958, and another record from 1970. All the records showed that a right of way ran across the entire northern edge of the area that eventually became the Morans' property. The magistrate noted that Mr. Moran's own witness, a surveyor named James Dundon, acknowledged the existence of the right of way. (Tr., p. 165.)
 {¶ 8} On May 28, 1997, the magistrate filed a decision resolving only the request for a permanent injunction. He concluded that the Collinses owned a permanent, non-exclusive right of way for ingress and egress across the northerly 15-foot section of the Morans' property, Canfield City Lot No. 2130. He granted the permanent injunction, allowed Appellees to reconstruct and maintain a driveway over the right of way, and to remove trees and other obstructions. Appellees' claims for damages and Appellants' counterclaim were not resolved in this decision.
 {¶ 9} Appellants filed timely objections to the magistrate's decision. The trial court overruled the objections eight months later, on February 9, 1998, and adopted the magistrate's decision as the judgment of the court.
 {¶ 10} On March 6, 1998, Appellants filed an appeal of the trial court judgment, but the appeal was dismissed for lack of a final appealable order. Collins v. Moran (Feb. 18, 2000), 7th Dist. No. 98 CA 46.
 {¶ 11} On June 16, 2000, Appellees filed a motion in the trial court for summary judgment pertaining to the Morans' counterclaim for damages. This motion was granted on October 5, 2000, and the counterclaim was dismissed.
 {¶ 12} Appellees' claims for damages came to trial on June 4, 2001. The trial court's judgment entry was filed the next day. The court attempted to adopt a 10-page transcript of the hearing as the judgment of the court. Appellants filed an appeal of this judgment, but this Court again dismissed the appeal for lack of a final appealable order. Collins v. Moran (Mar. 22, 2002), 7th Dist. No. 01 CA 127. This Court concluded that the trial court had not actually issued a clear order to the parties and that the matter of damages remained unresolved.
 {¶ 13} On remand, the parties entered into an agreed judgment entry on October 23, 2002, on the issue of damages. Appellees were awarded $6000 plus statutory interest from the date of judgment.
 {¶ 14} This third appeal was filed on November 21, 2002. This appeal challenges the permanent injunction and does not address the issue of damages.
 {¶ 15} Appellants' sole assignment of error states:
 {¶ 16} "The trial court erred in granting Plaintiffs/Appellees' Motion for Preliminary and Permanent Injunction over the northern 15 feet of Defendants' property because Plaintiffs/Appellees failed to prove they had the right to use said easement by clear and convincing evidence and the court's judgment was contrary to law and against the manifest weight of the evidence."
 {¶ 17} The standard of review for this Court regarding the granting of an injunction by a trial court is whether the trial court abused its discretion. Perkins v. Quaker City (1956),165 Ohio St. 120, 125, 59 O.O. 151, 133 N.E.2d 595. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Our standard of review is very deferential to the trial court in this situation, and a reviewing court will not find an abuse of discretion when there is competent, credible evidence to support the trial court's decision. Middendorf v. Middendorf (1998), 82 Ohio St.3d 397,401, 696 N.E.2d 575. Furthermore, an appellant bears the burden on appeal of proving that errors occurred in the trial court, and must demonstrate the errors by specific reference to evidence and other materials in the official record. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384; App.R. 16(A)(7), (D).
 {¶ 18} A permanent injunction is an equitable remedy that will be granted only where there will be immediate and irreparable injury to the complaining party and there is no adequate remedy at law. Lemley v. Stevenson (1995),104 Ohio App.3d 126, 136, 661 N.E.2d 237. "The purpose of an injunction is to prevent a future injury, not to redress past wrongs." Id. In an action for a permanent injunction, the plaintiff must prove his or her case by clear and convincing evidence. In re Petitionto Annex 320 Acres to the Village of S. Lebanon, In (1992),64 Ohio St.3d 585, 591, 597 N.E.2d 463. "Clear and convincing evidence" has been defined as:
 {¶ 19} "* * * evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954),161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118.
 {¶ 20} Appellants' arguments on appeal have been presented in a very cursory manner with little reference to the record, but we will attempt to make as much sense of them as possible. One of the arguments is that Ohio's Marketable Title Act has extinguished the easement. Thus, Appellants assert the Marketable Title Act as a defense to Appellees' claims. Ohio's version of the Marketable Title Act, found in R.C. 5301.47-5301.56, acts as a 40-year statute of limitations for bringing claims against a title of record. The purpose of the Marketable Title Act is to, "simplify and facilitate land title transactions by allowing persons to rely on a record chain of title[.]" Semachko v.Hopko (1973), 35 Ohio App.2d 205, 301 N.E.2d 560, paragraph one of the syllabus. It appears from the record that Appellants did not assert this defense at trial or in their objections to the May 28, 1997, magistrate's decision that granted Appellees a permanent injunction. Defenses that are not timely asserted in the trial court are normally treated as being waived on appeal.Dardinger v. Anthem Blue Cross Blue Shield (2002),98 Ohio St.3d 77, 96, 781 N.E.2d 121.
 {¶ 21} Appellants also argue that the doctrines of laches and estoppel should apply to prevent Appellees from establishing their claim. Appellants did not raise the issue of laches in their objections to the magistrate's decision of May 28, 1997, and the issue is waived for purposes of appeal. In re Jeffreys
(Feb. 20, 2002), 7th Dist. No. 01-BA-4. As far as the estoppel argument is concerned, "[a]n appellate court reviews a lower court's application of the doctrine of equitable estoppel for abuse of discretion." Hoeppner v. Jess Howard Elec. Co. (2002),150 Ohio App.3d 216, 225, 780 N.E.2d 290. Estoppel is an equitable defense that can be nullified if the party asserting it has "unclean hands," that is, "has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief." McClanahan v. McClanahan (1946), 79 Ohio App. 231,234, 72 N.E.2d 798.
 {¶ 22} The magistrate found that it was Appellants who were estopped from raising this defense because of the way that they interfered with Appellees' use of the right of way, and because Appellees timely filed their complaint soon after Appellants stopped them from using the right of way. The record is clear that Appellants blocked everyone from using the right of way, even though Appellants freely admit that other people in Kings Lake Estates should be allowed to use the right of way. It appears that Appellants knowingly committed an illegal act by blocking an acknowledged right of way in order to prevent one family from using it. Given these facts, there was no abuse of discretion in the magistrate's refusal to apply the doctrine of estoppel in Appellants' favor.
 {¶ 23} Appellants further argue that the equitable remedy of injunction should not have been applied because there was a plain remedy at law that could have been sought, the remedy of a quiet title action. As noted above, a permanent injunction is an equitable remedy that will be granted only where the act sought to be enjoined will cause immediate and irreparable injury to the complaining party and there is no adequate remedy at law.Lemley, supra, 104 Ohio App.3d at 136, 661 N.E.2d 237. Once Appellants blocked the use of the right of way, a quiet title action would not have helped Appellees regain immediate physical access to the property, and it was physical access that Appellees wanted as their remedy.
 {¶ 24} At oral argument Appellants asserted for the first time that they were the actual beneficiaries of the easement granted to Leah Porter. Appellants seem to have been raising the defense that the dominant and servient estates had merged at some point in the chain of title to their property. "The doctrine of merger rests upon the principle that a servitude may not be impressed upon an estate of another estate when both estates are owned by the same person. Thus, an easement is terminated when the dominant and servient estates become owned by the same person or persons." (Citations omitted.) Hiener v. Kelley (July 23, 1999), 4th Dist. No. 98CA7.
 {¶ 25} As noted above, an appellant cannot normally put forth a defense for the first time on appeal, but we will treat Appellants' defense as an assertion that the trial court's judgment is against the manifest weight of the evidence. In a civil case, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578.
 {¶ 26} Appellees presented evidence that their root of title to the right of way arose from a deed from Sylvenus Porter and Lucinda Porter to James B. Chambers, dated November 12, 1904, which granted a strip of land 1254 feet long and 15 feet wide to Mr. Chambers, while at the same time, "reserving a right of way heretofore granted to Leah S. Rogers." Appellants appear to believe that Appellees' root of title could only have arisen from a deed filed on March 28, 1894, from S.S. Porter and Lucinda Porter to Leah Rogers, which described, "an easement or undivided right of way," in the shape of an "L" that extended from former Clay Street and then partially paralleled the 1254 foot right of way mentioned above. It is clear from the deed description that this second right of away does not overlap with Appellants' property.
 {¶ 27} It is evident from reading the exhibits in this case that these two right of ways were not always clearly distinguished in the subsequent title transfers ultimately leading to the current dispute. Nevertheless, Appellees presented a variety of other evidence that clearly showed the existence of a right of way across the northern edge of Appellants' property. A right of way is identified in the 1989 Plat Map of Kings Lake Estates, where Appellants' property is located. (Pl. Exh. 6, p. 3). This right of way is preserved in the October 3, 1989, "Declaration of Restrictions Governing Kings Lake of Canfield." (Def. Exh. 5.) Evidence also showed the existence of a right of way in plat maps from 1938 and 1958. Testimony revealed that the right of way had been used since at least 1953. Thus, there was ample evidence for the trial court to conclude that a right of way existed. In contrast, Appellants have not pointed to any evidence in the record that might indicate that the right of way originally granted to Leah Porter had merged with property in Appellants' chain of title, or was otherwise extinguished.
 {¶ 28} Based on the previous analysis, we find no abuse of discretion in the trial court's decision to grant a permanent injunction. As explained above, our role as a reviewing court is very limited with respect to discretionary decisions of a trial court. The trial court based its decision on the evidence and arguments presented by the parties at the time of the evidentiary hearing. There is nothing irrational or arbitrary about the trial court's judgment. Therefore, we overrule Appellants' sole assignment of error, and affirm the judgment of the Mahoning County Court of Common Pleas in full.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.