OPINION
{¶ 1} Plaintiff-appellant, James Sturgeon, appeals from a Columbiana County Common Pleas Court, Domestic Relations Division judgment granting him a divorce from defendant-appellee, Nadine Sturgeon, and finding that certain stocks were martial property.
 {¶ 2} Appellant and appellee were married on June 21, 1964. Appellant filed a complaint for divorce on July 19, 2002. The matter proceeded to trial on September 11, 2003. At the trial, the parties testified about a close friend named Dorothy Myers whom they took care of. Upon the parties' request, the magistrate agreed to hold the record open for a month, so that they could provide social security evaluations and updated pay stubs and bank records.
 {¶ 3} Appellee subsequently filed a motion for leave to present additional evidence. She based this request on the fact that Mrs. Myers had passed away after the trial and the inheritances/expectancies that appellant had testified about at the trial were now certain. Appellee stated that appellant was the primary beneficiary of Mrs. Myers' will, which included stock, bank accounts, mobile homes, and other assets. Appellee alleged that Mrs. Myers' death radically changed the parties' situation, including the division of property and spousal support.
 {¶ 4} Consequently, the magistrate held another hearing at which she heard evidence regarding appellant's inheritance from Mrs. Myers. The magistrate found the following. Both parties provided care for Mrs. Myers. Mrs. Myers had named appellant as her power of attorney. During her life, Mrs. Myers gifted many items to the parties including a coin collection and stocks. The 22,160 shares of stock with Sky Financial were held in the name of appellant or Mrs. Myers and another 7,334 shares were held in the name of appellant and Mrs. Myers. All items were gifted during the course of the marriage and no evidence was presented that they were given to appellant alone. Appellant testified that he returned the coin collection and several other items to Mrs. Myers when he could not prove that she had gifted them to him alone. He stated that he did not return the stock because it was jointly held between him and Mrs. Myers. However, he did not list the stock as separate property on his financial affidavit or in his answers to interrogatories. Mrs. Myers died on September 26, 2003, leaving appellant as her sole beneficiary with the exception of three specific bequests of $1,000 each.
 {¶ 5} Consequently, the magistrate found that the 22,160 shares of stock, valued at $530,067.20; one half of the 7,334 shares, valued at $87,714.64; and a coin collection, valued at $3,987.89, were marital property. Thus, in making her award of marital property, the magistrate included these items in the division of assets.
 {¶ 6} Both parties filed objections to the magistrate's decision. Specifically, appellant objected to the magistrate's findings regarding the stock and the coin collection. He argued that the evidence proved that Mrs. Myers gifted the stock to him alone in 1996. Therefore, he argued the magistrate erred by awarding appellee a disproportionate portion of the martial assets because she considered appellant's gift from Mrs. Myers as part of his award. Appellee's objections centered on social security evaluations and appellant's PERS pension.
 {¶ 7} The trial court held a hearing on the objections. It then entered judgment affirming the magistrate's decision with the exception of a discrepancy dealing with the PERS account, which it modified. The court found that there was little evidence explaining the gifts of stock and any evidence that was presented was conflicting. It noted that appellant claimed that he solely took care of Mrs. Myers and that the gifts were made solely to him. However, it also noted that appellee testified otherwise. The court specifically took notice of the facts that appellant did not list the stock as his separate property on his financial affidavit and that the stock was not listed as an asset of Mrs. Myers' estate. Thus, the court concluded that the stock was a marital gift and the magistrate properly treated it as a marital asset.
 {¶ 8} Appellant filed his timely notice of appeal on June 8, 2004.
 {¶ 9} Appellant raises three assignments of error, the first of which states:
 {¶ 10} "THE TRIAL COURT AND MAGISTRATE ERRED IN FINDING THAT APPELLANT FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT MRS. MYERS GIFTED TO HIM AND HIM ALONE SO AS TO CONSTITUTE SEPARATE PROPERTY THE SHARES OF STOCK ISSUED TO DOROTHY MYERS AND/OR JAMES STURGEON BY CITIZENS BANKSHARES, INC. AND ITS SUCCESSOR, SKY FINANCIAL GROUP, INC."
 {¶ 11} Appellant argues that the evidence clearly demonstrated that Mrs. Myers gifted the stock to him alone, and not to appellee. He claims that there was no evidence presented that would suggest the stock is martial property. Because the court mistakenly characterized the stock as marital property, appellant claims, the division of property is unfair and must be reconsidered. Furthermore, appellant contends that by naming him, and not appellee in her will, Mrs. Myers further expressed her intent that the stock was a gift to appellant alone and not to appellee. Thus, appellant asks that we find that the stock was his separate property and order the trial court to reconsider its division of property accordingly.
 {¶ 12} An appellate court will not reverse a trial court's characterization of property as separate or marital absent an abuse of discretion. Peck v. Peck (1994), 96 Ohio App.3d 731, 734,645 N.E.2d 1300. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Our review of a trial court's classification of property as marital or separate is based on whether the determination is supported by the manifest weight of the evidence. Jamesv. James (1995), 101 Ohio App.3d 668, 684, 656 N.E.2d 399. We will uphold the findings of a trial court where the record contains some competent evidence to support those findings. Fletcher v. Fletcher
(1994), 68 Ohio St.3d 464, 468, 628 N.E.2d 1343.
 {¶ 13} In a divorce proceeding, the court shall determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). After making this determination, the court shall make an equitable division of the marital property. R.C. 3105.171(C)(1). Generally, the court shall also disburse a spouse's separate property to that spouse. R.C. 3105.171(D).
 {¶ 14} There is a presumption that property acquired during the marriage and held by a spouse is marital property. R.C. 3105.171(A)(3)(a)(i). The holding of title to property by one spouse individually does not determine whether the property is marital property or separate property. R.C. 3105.171(H). Separate property includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(vii).
 {¶ 15} Appellant notes that at least one other court has held that where a benefactor gives a gift to a husband, the fact that the benefactor put only the husband's name on the gift, and not the wife's name, was strong evidence that he intended the gift only go to the husband. Wolfangel v. Wolfangel (May 24, 1995), 9th Dist. No. 16868. InWolfangel, the wife argued on appeal that the trial court erred by classifying a certificate of deposit (CD) received from the husband's grandfather during the marriage as the husband's separate property. The wife contended that, because she helped to care for the husband's grandfather during his illnesses, the CD was more likely intended as a joint gift. She also argued that the husband presented no evidence other than the fact that her name was not on the CD. The Ninth District found that the fact that the grandfather put only the husband's name on the CD was strong evidence that the grandfather intended the CD as a gift only to the husband. It also noted that despite the fact the wife may have cared for the grandfather during his declining years, there was no evidence that the grandfather ever expressed any intention to reward her for her services or that the CD was intended as a gift to both spouses.
 {¶ 16} Additionally, the court cited to a case where the appellate court held that a party to a divorce sustained her burden of proof that she received a gift of money intended only for her where the evidence showed that the gift was from her mother and the check was made out exclusively in her name. Reynolds v. Reynolds (Feb. 8, 1993), 12th Dist. No. CA92-07-013. In Reynolds, the husband argued that a check made out to the wife from her mother during the course of the marriage was marital property. The court found that the fact that the check was made out solely to the wife was sufficient evidence for the trial court to firmly conclude that the check was given solely to her. It also made note of the fact that the check was from the wife's parent.
 {¶ 17} Given the reasoning in these cases, it may seem that the trial court erred in the present case in finding that the stocks were marital property. However, two distinctions are apparent here. One distinction is that in Wolfangel and Reynolds, the trial court had determined that the property at issue was separate property and the appellate court affirmed those decisions. Here, however, the trial court determined that the stocks were marital property. Given our standard of review, as long as there is competent evidence to support the trial court's characterization, we must affirm its decision. Another difference is that in Wolfangel and Reynolds, the gifts were from a spouse's grandfather and mother respectively. It would seem that a parent or grandparent may be more inclined to give a gift solely to their child or grandchild and not to the child's/grandchild's spouse. In this case, Mrs. Myers was of no relation to either party and the testimony demonstrated that both parties had a close relationship with her.
 {¶ 18} It is important that we examine the evidence, other than the lack of appellee's name on the stock certificates, in determining whether it supports the trial court's decision.
 {¶ 19} At the divorce trial, there was quite a bit of evidence about 94-year-old Mrs. Myers and the parties' relationship with her. At that time, Mrs. Myers was bedridden. Both parties had a close relationship with Mrs. Myers and her late husband. After Mr. Myers died, Mrs. Myers moved into a trailer on the parties' property. They routinely included Mrs. Myers in holiday celebrations, vacations, and day-to-day activities. Mrs. Myers did not have any family after her husband passed away. She apparently was very well off and frequently gave the parties gifts of money and other items, including helping one of their children to pay for college.
 {¶ 20} The stock certificates were introduced into evidence. (Defendant's Exh. I). The certificates listed the record holders as either "Dorothy H Myers James T. Sturgeon" or "Dorothy H Myers or James T. Sturgeon." (Defendant's Exh. I). Appellant testified that they were gifts to him. (Tr. 24). He also testified that Mrs. Myers gave them to him during the course of the marriage. (Tr. 82-83).
 {¶ 21} Appellant explained that in 1996, Mrs. Myers asked him to accompany her to the bank. (Tr. 135). She then told him that she wanted to put his name on her stock. (Tr. 136). Appellant testified that the gift was a surprise to him. (Tr. 136). Mrs. Myers then signed the assignment portion of the certificates. (Tr. 136). Appellant testified that the stocks were a gift to him, but that they were not really his until Mrs. Myers died. (Tr. 157). Additionally, appellant testified that Mrs. Myers had given him numerous other gifts, but that since he was unable to prove that they were gifts solely to him, he returned those gifts to Mrs. Myers except for the stock. (Tr. 232-4, 79).
 {¶ 22} It is also important to note that in appellant's answers to interrogatories, he stated that he was not claiming any separate property. (Tr. 59). And in his financial affidavit, there was a section for him to list gifts only to one spouse. Appellant listed only coins, guns, a clock, and a dog. (Tr. 59-60). He did not list the stock.
 {¶ 23} Appellee testified about the parties' relationship with Mrs. Myers. She stated that she bought gifts for Mrs. Myers on her birthday and Christmas. (Tr. 201). She stated that she cleaned the house for her. (Tr. 201). Appellee stated that Mrs. Myers was included in all of their family events, such as going to church, going out to eat, their children's weddings, and spending Christmas together. (Tr. 202). She also stated that they sometimes took trips together. (Tr. 202). Appellee stated that she often cooked for Mrs. Myers, and that on Fridays she took Mrs. Myers into town to get her hair done, run errands, and go out to eat with her. (Tr. 202-203). Mrs. Myers would pay for appellee's groceries and lunch on these trips. (Tr. 221). She further stated that Mrs. Myers considered her, appellant, and their children as her family. (Tr. 203). Appellee also testified that Mrs. Myers gave them a house full of belongings and paid for a vacation for her and appellant to go to Hawaii. (Tr. 204, 221). She further testified that Mrs. Myers had given her gifts of money. (Tr. 2212-2).
 {¶ 24} After Mrs. Myers died, the court held another hearing. At this hearing, appellee introduced the schedule of assets for Mrs. Myers' estate. Noticeably absent on the schedule of assets was any stocks. (Defendant's Exh. A). And appellant's counsel acknowledged that the stocks were not probate assets. (Tr. 4).
 {¶ 25} Upon hearing the evidence in this case, one could conclude that since Mrs. Myers had given appellee gifts in the past, if she had intended to give appellee the stock also, Mrs. Myers would have included appellee's name on the stock certificates. But one could also conclude that because appellee and appellant both cared for Mrs. Myers and included her in family events and because Mrs. Myers had given them marital gifts in the past, i.e. a Hawaiian vacation, Mrs. Myers wanted them to share the stock.
 {¶ 26} Given this evidence, we cannot conclude that the trial court abused its discretion in finding that the stock was marital property. In order to conclude that the trial court abused its discretion, we would have to find "not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. We cannot make this finding. In this case, the evidence presents a close call as to whether the stock is marital or separate property. Furthermore, since the stock was received during the course of the marriage, appellant had the burden to prove that it was his separate property. Since competent evidence exists to support the trial court's determination, we must defer to its decision. Accordingly, appellant's first assignment of error is without merit.
 {¶ 27} Appellant's second assignment of error states:
 {¶ 28} "IN THE EVENT THAT THE APPELLANT DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE TRANSFER OF INTEREST IN THE MYER'S [sic.] STOCK WAS A GIFT TO HIM SOLELY, THE COURT AND MAGISTRATE ERRED IN FINDING THAT A GIFT HAD BEEN MADE TO ANYONE."
 {¶ 29} While appellant lists this assignment of error in his brief, he fails to support it with any argument whatsoever. Furthermore, appellant himself testified that the stock was a gift to him. (Tr. 24, 157). Thus, the court had competent, credible evidence before it that the stock was a gift. Accordingly, appellant's second assignment of error is without merit.
 {¶ 30} Appellant's third assignment of error states:
 {¶ 31} "IN THE EVENT THAT THE APPELLANT DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE TRANSFER OF INTEREST IN THE MYER'S STOCK WAS A GIFT TO HIM SOLELY, AND THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH A MARTIAL PROPERTY GIFT, THE COURT AND MAGISTRATE ERRED IN FAILING TO FIND AND DETERMINE THE THEN VALUE OF THE GIFT, THAT IS, THAT APPELLANT HAD ONLY A PRESENT ONE HALF LEGAL INTEREST IN THE STOCK. THE COURT ERRED IN IT'S [sic.] DETERMINATION OF THE APPELLANT'S INTEREST IN THE SKY FINANCIAL STOCK AND THE VALUE THEREOF, IF ANY."
 {¶ 32} Appellant points us to the magistrate's finding that the parties owned the stock as a marital asset and he asserts that this finding begs the question: What was the interest of Mrs. Myers, who was still living at the time of the September 11, 2003 trial? Appellant then continues with a discussion about joint and survivorship interests and asserts that such was not the case with the stock certificates. He argues that since there were no words on the stock certificates that they were owned as joint and survivorship and because he did not contribute any of his own funds to purchase the stock, he had merely a legal interest in the stock during Mrs. Myers' lifetime. However, he contends that upon Mrs. Myers' death, the stock reverted to her estate. Appellant continues that since he inherited the stock after Mrs. Myers died, it must be considered separate property.
 {¶ 33} Appellant failed to raise this issue in his objections to the magistrate's decision. Therefore, he has waived this issue on appeal.Collins v. Moran, 7th Dist. No. 02-CA-218, 2004-Ohio-1381, at ¶ 21. Furthermore, not only did appellant fail to raise this issue in his objections to the magistrate' decision, he specifically stated in his objections that the reason the stocks were not listed in probate schedule of assets was because they were held as joint and survivorship property. Thus, he cannot now argue the opposite, that being that the stocks were not held as joint and survivorship property. Accordingly, appellant has waived his third assignment of error.
 {¶ 34} For the reasons stated above, the trial court's decision is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.