SEMACHKO ET AL., APPELLANTS, *v.* HOPKO, APPELLEE.

[Cite as Semachko v. Hopko (1973), 35 Ohio App. 2d 205.]

206

(No. 32262—Decided August 23, 1973.)

*Mr. Sanford W. Likover,* for appellants.
*Mr. Richard Emmett* and *Mr. Samuel Sonenfeld,* for appellee.

KRENZLER, J. Plaintiffs filed a complaint in the Common Pleas Court of Cuyahoga County on December 14, 1970 for declaratory judgment, injunction and other relief, alleging that they are the owners of a certain parcel of realty situated in the City of Parma, and that the defendants also are the owners of certain property in the same subdivision.

Plaintiffs alleged that all of the lots in the subdivisions have the same deed restrictions that run with the

land, to-wit: "* * * that no building shall be erected on the lot nearer than 35 feet to the sidewalk line and to cost at least $1,200, and the building will be for private residences only. * * *."

Plaintiffs alleged that the defendants desire to use their property for funeral home purposes and have prevailed upon Council of the City of Parma to change its zoning, and that the ordinance rezoning the defendants' property is unconstitutional and void as spot zoning and is arbitrary and unreasonable and has no substantial relation to public health, safety, morals or general welfare; and that if the defendants are permitted to construct the funeral home, it will be in direct violation of the deed restrictions.

The plaintiffs asked the court to declare the deed restriction valid and enforceable and to declare zoning ordinance No. 346-69 unconstitutional, null and void; and that the defendants be permanently restrained and enjoined from using their lot for any purpose other than private residential purposes.

Defendants Hopko filed an answer denying that there is a restriction on the use of their property based on the Ohio Marketable Title Act, R. C. 5301.47 to R. C. 5301.56, inclusive. Defendants admitted that the Council of the City of Parma rezoned their property from a B-1 to a C-3 classification but denied that construction of a funeral home on their property would result in damage to the plaintiffs.

Defendant, City of Parma, filed an answer which need not be considered in dealing with this appeal.

The trial court granted a temporary injunction on July 8, 1971 against the defendants from proceeding to build the funeral home during the pendency of the action, and the case was advanced for trial.

The case was tried on July 10, 1972 and the trial court entered judgment for the defendants on September 5, 1972.

In its judgment entry the trial court found that the plaintiffs are the owners of certain residential property on Keystone Road in Parma and that the defendants purchased five sublots on the corner of Keystone and Broadview Roads with the intention of constructing a mortuary thereon. The lots of all the parties are in the same subdi-

vision upon which a restrictive covenant was placed in 1913 and said covenant restricts the subdivision to residential purposes only.

The trial court found that Broadview Road is a four lane main city artery with heavy automobile, bus and truck traffic; and that within one mile in either direction of the subject property and located on Broadview Road there are many business establishments and several churches and schools as well as numerous residences. The trial court found that the City of Parma rezoned the subject property for office building use.

The trial court found that the nature of Broadview Road has changed substantially in recent years and the changes have been so drastic that the intent of the deed restriction to preserve the residential nature of the locality has been nullified. The district is business and not residential in nature.

The trial court concluded that the substantial changes on Broadview Road have so altered the fundamental nature of the locality that the restrictive covenant of 1913 is no longer binding. The trial court denied the plaintiffs' request to enjoin defendants from proceeding with the proposed construction on the subject property and judgment was entered for the defendants.

It is noted that the trial court did not rule on the issue of whether the use restriction was still valid under the Marketable Title Act.

The plaintiffs have taken this appeal and have six assignments of error.

1. The Court erred in finding the nature of the locality has so drastically changed as to render the intent of the restriction to preserve the residential nature of the district has been nullified.

2. The Court erred in finding that the nature of Broadview Road has changed substantially in recent years.

3. The Court erred in finding that the rezoning of the district of the municipality is evidence of the change in character of the neighborhood.

4. The Court erred in considering the character of the

adjoining land as much as a mile away in finding that the true intent and spirit of the restrictions inapplicable.

5. The Court erred in adjudging that there were substantial changes on Broadview Road so as to destroy their restrictive covenant of 1913.

6. The Court's findings and conclusions are against the manifest weight of the evidence and contrary to law.

We will consider two principal issues in this appeal: (1) whether the restriction in the use of the subject property for private residence purposes only is valid or was extinguished under the Ohio Marketable Title Act, R. C. 5301.47 through R. C. 5301.56; (2) whether there have been substantial and drastic changes in the neighborhood which would nullify the deed restrictions.

The Ohio Marketable Title Act became effective September 29, 1961 and is to be liberally construed. The purpose of this act is to simplify and facilitate land title transactions by allowing persons to rely on a record chain of title as described in R. C. 5301.48, and subject to the limitations of R. C. 5301.49. See R. C. 5301.55.

Because of the technical nature of the Act and its necessary application to the issues in this case, we will briefly review its pertinent and applicable provisions.

Any person having legal capacity to own land in this State, who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest. A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction of record of not less than forty years at the time the marketability is to be determined. The conveyance or other title transaction must purport to create such interest, either in the person claiming it or in some other person from whom, by one or more conveyances or other title transactions of record, such purported interest has become vested. However, nothing must appear of record purporting to divest such claimant of such purported interest. R. C. 5301.48.

"Marketable record title" means a title of record, which operates to extinguish such interests and claims exis-

ting prior to the effective date of the root of title. R. C. 5301.47 (A). Subject to certain exceptions stated in R. C. 5301.49, record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. R. C. 5301.50.

"Root of title" means that conveyance or other title transaction in the chain of title of a person purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it is recorded. R. C. 5301.47 (E).

Record marketable title shall be subject to interests and defects which are inherent in the muniments of the chain of record title; but general references in deeds to easements, use restrictions, or other interests, created prior to the root of title shall not be sufficient to preserve them unless specific identification be made therein of a recorded title transaction which creates such easements, use restrictions or other interest. R. C. 5301.49 (A).

Language such as "subject to easements and restrictions of record" is inadequate to preserve these interests, even though a general reference appears in the deeds of title which make up the entire forty year chain. In order to preserve such interests the statute requires specific identification of the earlier transaction or recording under R. C. 5301.51 (A).

Any person claiming an interest in land may preserve and keep effective such interest by filing for record a notice of such interest in writing with the county recorder during the forty year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable. R. C. 5301.51 and R. C. 5301.52. An interest which has been extinguished cannot be revived by recording such interest. R. C. 5301.49 (D).

It is noted that record marketable title is subject to

certain exceptions: (1) all interest and defects which are inherent in the muniments of which such chain of record title is formed; (2) all interest preserved by the filing of proper notice or by possession by the same owner continuously for a period of forty years or more; (3) the rights of any person arising from a period of adverse position; (4) any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; (5) exceptions stated in R. C. 5301.53. See R. C. 5301.49(A)-(E).

The following will illustrate what will extinguish an interest in land, or stated conversely, what will preserve an interest in land.

Any interest in land such as an easement or use restriction in existence prior to a root of title is extinguished unless it is:

(1) specifically stated or identified in the root of title;

(2) specifically stated or identified in one of the muniments of the chain of record title within forty years after the root of title;

(3) recorded pursuant to R. C. 5301.51 and R. C. 5301.-52;

(4) one of the other exceptions provided for in R. C. 5301.49;

(5) one of the rights that cannot be barred by the Marketable Title Act as provided in R. C. 5301.53.

Conversely, in order to preserve an interest in land in existence before the root of title such interest must be specifically stated or identified in the root of title or specifically stated or identified in one of the muniments of the chain of record title within forty years after the root of title, or be recorded pursuant to R. C. 5301.51 and 5301.52 within forty years after the root of title.

Once such an interest in land is extinguished it cannot be preserved by recording.

The same rules apply to subdivision use restrictions. In order to preserve a subdivision use restriction which was in existence prior to a root of title on *all* of the parcels in the subdivision, such use restriction must be:

(1) specifically stated or identified in the root of title of every parcel in the subdivision;

(2) specifically stated or identified in the muniments of record chain of title of every parcel in the subdivision;

(3) recorded pursuant to R. C. 5301.51 and R. C. 5301.-52 against every parcel or against the entire subdivision.

The issue of the constitutionality of the Ohio Marketable Title Act has not been raised in this case—but similar legislation has been held constitutional in Iowa and Minnesota; *Wichelman* v. *Messner* (1957), 250 Minn. 83, 83 N. W. 2d 800; *Tesdell* v. *Hanes* (1957), 248 Iowa 742, 82 N. W. 2d 119.

The following is necessary to resolve the issue as to whether the deed restriction on the defendants' property for private residence purpose is still in effect:

| | |
|---|---|
| 1. March 4, 1912 | Joint Exhibit 25:<br>S. H. Kleinman's Broadview Farms recorded Subdivision of 46 lots. The subject property is original sublot 2. |
| 2. December 3, 1920 | Joint Exhibit 1:<br>Warranty Deed from the S. H. Kleinman Realty Co. to Sarah Dooley transferring original sublot 2 in the S. H. Kleinman's Broadview Farms subdivision. The warranty deed contained the following restriction:<br>"This lot is subject to the following restrictions, conditions and limitations which shall run with the land, to wit: That no building shall be erected or suffered to be erected on said lot nearer than 35 feet to the sidewalk line and to cost at least $1200. Said building to be used for private residence purposes only." |

3. May 26, 1922    Joint Exhibit 2:
Warranty Deed from Sarah Dooley to Emma Sargis of all of the original sublot 2 in S. H. Kleinman's Realty Co. Broadview Farms. The warranty deed contains a use restriction as follows:

"This lot is subject to the following restrictions, conditions and limitations which shall run with the land, to-wit:

"That no building shall be erected or suffered to be erected on said lot nearer than 35 feet to sidewalk line, and to cost at least $1200. Said building to be used for private residence purposes only."

4. March 4, 1932    Joint Exhibit 3:
Quit Claim Deed from Emma Sargis to William H. Sargis for a small portion of original sublot 2. This was a standard quit claim deed and did not recite the specific use restriction "for residence purposes only."

5. August 2, 1950    Joint Exhibit 4:
Auditor's deed to Joe and Anna Klamar for the large portion of original sublot 2 remaining after the transfer of March 4, 1932. No use restriction contained in this deed.
(Note 1959-1960)
During the period 1959 through 1960, Anna Klamar obtained all of original sublot 2.

6. May 1, 1967    Joint Exhibit 28:
Original sublot 2 re-subdivided

7. December 4, 1970    by Anna Klamar into five sublots and recorded on this date. Joint Exhibit 12: Warranty Deed from Walter G. Gazda and Adlyn G. Gazda to Charles, Dorothy, and Cheryll Hopko for the five sublots in Anna Klamar's re-subdivision. This warranty deed did not contain a specific use restriction for residence purposes only, but only to "restrictions of record."

8. December 14, 1970    Plaintiffs filed their complaint for declaratory judgment, injunction and other relief in the Common Pleas Court of Cuyahoga County.

9. December 14, 1971    Joint Exhibit 13: Certificate of Transfer of Real Estate in the Probate Court of Charles Hopko's interest in sublots 1 through 5 to Dorothy Hopko.

10. July 10, 1972    Trial.

11. September 5, 1972    Judgment for defendants.

In this case, marketability of title is being determined as of the time of trial, July 10, 1972. The property upon which marketability of title is being determined is Anna Klamar's re-subdivision (sublots 1 through 5) which was originally sublot 2 of the S. H. Kleinman subdivision as noted above.

To better illustrate the chain of record title of original sublot 2 (re-subdivision sublots 1 through 5), we have prepared copies of Joint Exhibit 25, which reflects original sublot 2; Joint Exhibit 21, which reflects the split of sublot 2 on March 4, 1932; and Joint Exhibit 28, which shows the re-subdivision into five sublots, and attached them to this Opinion as Exhibit A.

To summarize: Original sublot 2 was a part of a 46 lot subdivision recorded on March 4, 1912. The developer transferred all of sublot 2 to Sarah Dooley by Warranty Deed on December 3, 1920 with a specifically stated use restriction. Sarah Dooley transferred all of sublot 2 to Emma Sargis on May 26, 1922 with a specific use restriction. On March 4, 1932, original sublot 2 was split by recording of a Quit Claim Deed from Emma Sargis to William H. Sargis. The split of sublot 2 created a large lot and a small lot, as can be seen by Joint Exhibit 21. This Quit Claim Deed did not contain a specific restriction "for residence purposes only."

Because of the split of sublot 2 each portion created has a different root of title since the root of title is the most recent recorded conveyance as of a date forty years prior to the time when marketability is being determined.

The root of title for the smaller portion of original sublot 2 is the deed dated March 4, 1932. There was a specific use restriction on this parcel prior to the root of title as stated in the deed of May 26, 1922. However, the March 4, 1932 transfer was by Quit Claim Deed and did not contain a specific use restriction, nor does the chain of record title indicate a specific use restriction or specific identification of a use restriction, or a recording of the use restriction. Because the use restriction in existence prior to the root of title was not specifically stated or identified in the root of title or in the chain of record title and was not recorded within forty years after the root of title, it is extinguished.

Joint Exhibit 29, a certified copy of the County Recorder's Notice Index, dated July 10, 1972, does not reflect any recording preserving a use restriction "for residence purposes only" on any portion of original sublot 2, nor is there a recording preserving the use restriction on the entire subdivision.

Consequently, the original use restriction on the small portion of original sublot 2 (Joint Exhibit 3) has not been preserved and is extinguished.

The root of title for the larger portion of original sublot 2 remaining after the split is the May 26, 1922 warranty deed. There was a specific use restriction "for residence

purposes only" prior to the root of title and such restriction is specifically stated in the root of title and still appears in the chain of record title and has not been extinguished.

Plaintiffs are partially correct regarding the use restriction of defendants' property. The use restriction on defendants' property "for residence purpose only" is still valid and binding but only on the large portion described in Joint Exhibit 3.

We will now turn our attention to the issue of change of character of the neighborhood.

Assignments of Error Nos. 1 through 5 deal with the trial court's findings that there were changes of such a substantial nature as to nullify the deed restrictions. These assignments of error are not well taken.

After carefully reviewing the record, including the transcript of testimony, reasonable minds can come to different conclusions whether there was a substantial change in the character of the neighborhood in the vicinity of the property of plaintiffs and defendants so as to nullify the deed restrictions limiting the use of the property for residential uses only. Under such circumstances, a court of equity will not enforce such restriction. *Snow* v. *Socony Vacuum Oil Co.* (1946), 46 Ohio Law Abs. 317; *Jones* v. *Van Deboe Hager Co.* (1939), 29 Ohio Law Abs. 385; *Olberding* v. *Smith* (1934), 34 Ohio Law Abs. 84. The trial court found there was a substantial change in the character of the neighborhood. Under such circumstances an appellate court must affirm the judgment of the trial court.

The sixth assignment of error is not well taken. When there are such substantial changes that the character of a neighborhood is changed from residential use to commercial use as a matter of law, restrictions on use of property in the neighborhood are no longer valid. Because the court's findings and conclusions are supported by the record and not against the manifest weight of the evidence and not contrary to law, we must affirm the judgment of the trial court.

*Judgment affirmed.*

SILBERT and JACKSON, JJ., concur.