JOURNAL ENTRY AND OPINION
{¶ 1} Appellants Murray Energy Corporation and Chagrin Executive Offices, LLC (collectively referred to hereinafter as "Murray") appeal the trial court's denial of their motion for preliminary and permanent injunctions and dismissal of two of the three counts in their complaint. Murray sets forth the following assigned errors:
 "I. The lower court erred in granting appellees' Rule 12(B)(6) motion to dismiss counts I and III of appellants' complaint, as plaintiffs had standing under R.C. 713.13."
 "II. The lower court erred in failing to enjoin serving of liquor on appellees' proposed liquor serving patio between 11 p.m. and 8 a.m., as such service would violate deed restrictions in a 1971 deed in appellees' chain of title."
 "III. The lower court erred in failing to enjoin construction of appellees' liquor serving patio, as such construction would expand violations of deed restrictions on appellees' property."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decisions. The apposite facts follow.
 {¶ 3} Appellees, the City of Pepper Pike, Pepper Pike Properties, LP and T.V. Restaurant, Inc. dba Marbella Restaurant (collectively referred to hereinafter as "Marbella"), desired to expand their restaurant to include an outdoor patio that would serve alcohol. The restaurant is located at 29425 Chagrin Boulevard in Pepper Pike, Ohio.
 {¶ 4} The building in which the restaurant is located is on a lot that was originally part of a large subdivision owned by the Van Sweringen Company ("VSC"). The 1940 VSC deed contained a restriction, among many others, stating: *Page 4 
"No spiritous, vinous or fermented liquors shall be manufactured or sold, either at wholesale or retail upon said premises." In 1944, the VSC quit-claimed over 40 large parcels of property to Warren L. Morris, which included the restaurant property. The 1944 deed contained the VSC restrictions. In 1947, the VSC and Morris, together executed an instrument imposing certain restrictions and reserving certain rights on the property. The 1947 instrument again referenced the alcohol prohibition.
 {¶ 5} In 1955, the Sheriff of Pepper Pike transferred four of the lots, including the restaurant property, to Hyman Rapport in foreclosure. This deed failed to mention specifically the restrictions contained in the VSC deed, and the various transfers thereafter also did not contain the restriction.
 {¶ 6} On September 20, 2006, the City of Pepper Pike formally approved the Planning Commission's decision to grant Marbella permission to install a patio at the front of the building, which would allow the restaurant to offer its customers outdoor dining. The patio is approximately 1,500 square feet in area, which will add approximately fifty more seats during the summer months. There will be no bar on the patio, but patrons will be permitted to dine and drink on the patio. The patio does not go beyond the property boundaries of Marbella. A restaurant has operated out of this location for the past thirty-five years, with Marbella as the restaurant for approximately the last ten years.
 {¶ 7} Murray operates its business in a building owned by Chagrin Executive Offices, LLC, which is on a lot adjacent to the Marbella Restaurant. Murray objected *Page 5 
to the expansion of the restaurant at the hearings before the Planning Commission and City Council, arguing the sale of alcohol is barred by the deed restrictions on the restaurant's property. It also argued that the expansion would bring the restaurant within 30 feet of the office building, creating noise disturbances and causing parking congestion. In spite of Murray's objections, the City approved the Planning Commission's decision to grant Marbella the variance to construct the patio.
 {¶ 8} Murray did not file an appeal from the City's decision. Instead, Murray filed a complaint for preliminary and permanent injunctions. It argued the patio constituted an expansion of a nonconforming use, violated the deed restrictions regarding the sale of alcohol, and violated Pepper Pike's code regarding side yard requirements. Marbella filed a motion to dismiss the first and third counts of the complaint, arguing Murray did not have standing under R.C. 713.13, failed to exhaust its administrative remedies, and res judicata barred judgment on these claims. The trial court granted the motion to dismiss, stating:
 "Upon review of the pleadings the court finds that plaintiff's counts one and three are based upon an administrative decision from the City of Pepper Pike City Council. Therefore, pursuant to R.C. 2506.01, the plaintiff has failed to exhaust administrative remedies. Furthermore, the court finds R.C. 713.13 does not apply in this case as defendant's actions, as alleged in the complaint, do not violate any zoning ordinance as they have properly obtained a variance."[1] *Page 6 
 {¶ 9} A hearing was conducted regarding Murray's allegation that the patio violated the deed restriction prohibiting alcohol. The trial court denied Murray's motion for preliminary and permanent injunctions after concluding on the record that the Marketable Title Act extinguished the restriction and the character of the neighborhood had changed making the restriction outdated.
 Dismissal of Claims {¶ 10} In its first assigned error, Murray argues the trial court erred in dismissing its first and third claims. Murray contends pursuant to R.C. 713.13, it did not have to exhaust its administrative remedies prior to appealing the City Council's decision. We disagree.
 {¶ 11} In order to prevail on a Civ. R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling it to recover.[2] A court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials.[3] Moreover, a court must presume that all factual allegations set forth in the complaint are true and must make all reasonable inferences in favor of the nonmoving party.[4] *Page 7 
 {¶ 12} When reviewing a judgment granting a Civ. R. 12(B)(6) motion, an appellate court must independently review the complaint to determine whether dismissal was appropriate. Decisions on Civ. R. 12(B)(6) motions are not findings of fact, but are rather conclusions of law.[5] An appellate court need not defer to the trial court's decision in Civ. R. 12(B)(6) cases.[6]
 {¶ 13} The trial court dismissed the two counts alleging the expansion of a nonconforming use and violation of the side yard requirements, based on the fact that Murray failed to exhaust its administrative remedies and that R.C. 713.13 did not apply because, since Marbella obtained a variance, there was no violation of a zoning ordinance. We agree with the trial court's conclusions.
 {¶ 14} R.C. 713.13 provides:
 "No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to Section 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially *Page 8 damaged by such violation, in addition to other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation."
 {¶ 15} Therefore, a plaintiff seeking an injunction under R.C. 713.13
has the burden of showing that he would not be merely damaged, but "especially damaged," by a "zoning violation."[7] In the instant case, as the trial court noted, Marbella did not violate a zoning violation because it obtained a variance from the City.
 {¶ 16} Murray disagrees with the Planning Commission's and Council's decision to grant the variance. However, the proper remedy was to appeal the administrative decision pursuant to R.C. 2506.01, not seek equitable relief pursuant to R.C. 713.13. As the Supreme Court in Eggers v.Mori[8] held:
 "Where an administrative agency has jurisdiction to make an order in a matter pending before it, and a right of appeal from such order to the Court of Common Pleas is provided by law to any person adversely affected thereby, such person is not authorized to bring an independent action in equity to enjoin the carrying out of such *Page 9 order, where the grounds relied upon in seeking the injunction are such as could be fully litigated in the appeal authorized by law."[9]
 {¶ 17} Murray fully participated in the administrative proceedings by attending the hearings before the Planning Commission and City Council, where he voiced his objections. City Council's approval of the granting of the variance by the Planning Commission constituted a final appealable order; therefore, Murray should have proceeded to appeal the decision pursuant to R.C. 2506, instead of attempting to start over with the equitable remedy of an injunction. By not appealing the matter, res judicata prevents Murray from attempting to relitigate the matter in the form of an injunction. In Grava v. Parkman Twp[10] the Supreme Court held that res judicata applies to a zoning board's denial of a request for a variance. The Court, quoting its decision in Set Products, Inc. v.Bainbridge Twp. Bd of Zoning Appeals,[11] stated:
 "In Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, 31 OBR 463, 510 N.E.2d 373, paragraph one of the syllabus, this court held that `the doctrine of res judicata applies to the decisions of a township board of zoning appeals relating to the grant or denial of variances * * *.' We *Page 10 explained that res judicata, whether claim preclusion or issuepreclusion, applies to administrative proceedings that are `of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding.' Id. at 263, 31 OBR at 465, 510 N.E.2d at 376 (quoting Superior's Brand v. Lindley [1980], 62 Ohio St.2d 133, 16 O.O.3d 150, 403 N.E.2d 996, syllabus). See, also, Consumers' Counsel v. Pub. Util. Comm. (1985), 16 Ohio St.3d 9, 16 OBR 361, 475 N.E.2d 782."
 {¶ 18} The Court went on to explain:
 "[B]y providing parties with an incentive to resolve conclusively an entire controversy involving the same core of facts, such refusal establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasi-judicial time and resources. The instability that would follow the establishment of a precedent for disregarding the doctrine of res judicata for `equitable' reasons would be greater than the benefit that might result from relieving some cases of individual hardship."[12] *Page 11 
 {¶ 19} In the instant case, Murray had ample opportunity to participate in the administrative proceedings, and, in fact, was very involved. Therefore, it should have appealed the matter instead of attempting to reopen the issues by filing a motion for injunctive relief, raising the same issues. The cases cited by Murray are distinguishable because they predate Grava, did not raise res judicata as a defense, and have plaintiffs who were not involved in the administrative process, but instead sought to enjoin a neighbor from violating a zoning ordinance without permission.[13]
 {¶ 20} We note that in opposition to the motion to dismiss, Murray argued the Planning Commission was without authority to grant the variance. However, looking solely at the complaint as we are bound to do pursuant to Civ. R. 12(B)(6), Murray never alleged in its complaint that the Planning Commission or City Council acted without authority in granting the variance. Accordingly, we overrule Murray's first assigned error. *Page 12 
 Injunction {¶ 21} In its second and third assigned errors, Murray argues the trial court erred in denying its claim for a preliminary and permanent injunction. Murray contends an injunction was necessary because permitting the serving of alcohol on the patio constituted a violation of the deed and the extension of a nonconforming use. We disagree.
 {¶ 22} There is no compelling evidence in the record that the trial court abused its discretion in denying the appellant's motion for injunctive relief based on the allegation that the deed restricting the serving of alcohol was violated. The trial court held a hearing on Murray's motion for injunctive relief relating to the deed restriction. After hearing the evidence, the trial court stated on the record that it was denying the motion because Ohio's Marketable Title Act ("MTA") extinguished the deed restriction prohibiting alcohol and also because the character of the neighborhood had changed from when the restriction was placed on the deed in 1940.
 {¶ 23} The purpose of the MTA is to improve the marketability of title by extinguishing certain outstanding claims due to a lapse of time.[14] R.C. 5301.48, which establishes "marketable record title," provides that: *Page 13 
 "Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest * * *."
 {¶ 24} "Marketable record title depends upon an unbroken chain of recorded title transactions from the present claimant back to the title transaction `which (1) has been of record for more than forty years and (2) adequately embodies the real property interest.'"[15] This title transaction is called the "root of title." A "root of title" is defined in R.C. 5301.47(E) as:
 "[T]hat conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined."
 {¶ 25} The effective date of the root of title is the date on which it is recorded.[16] It is undisputed in the instant case that the date of the root of title is 1955, when the Sheriff of Pepper Pike transferred the deed to Hyman Rapport as part of a foreclosure sale. Although the original 1940 deed placed a restriction on the sale or use of alcohol on the property, the root title of 1955 did not contain a specific directive regarding this restriction. *Page 14 
 {¶ 26} The MTA extinguishes certain interests and claims existing prior to the effective date of the root of title, "unless they are: (1) specifically stated or identified in the root of title, (2) specifically stated or identified in one of the muniments of the chain of record title within forty years after the root of title, (3) recorded pursuant to R.C. 5301.51 or R.C. 5301.52, (4) one of the other exceptions provided in R.C. 5301.49, or (5) one of the rights that cannot be barred by the MTA as provided in R.C. 5301.53."[17]
 {¶ 27} Following the transfer of the property in 1955 to Rapport, the subsequent changes to title did not directly reference the prohibition against alcohol. The deed transferring the property to Rapport did refer to "restrictions of record now in effect." However, this does not comply with the "specific identification" of the restriction required by R.C. 5301.49. As this court in Semachko held:
 "Language such as `subject to easements and restrictions of record' is inadequate to preserve these interests, even though a general reference appears in the deeds of title which make up the entire forty year chain. In order to preserve such interests the statute requires specific identification of the earlier transaction or recording under R.C. 5301.51(A)."[18]
 {¶ 28} Therefore, because there is no specific reference to the restriction for forty years forward from 1955, the 1940 restriction has been extinguished.[19] *Page 15 
 {¶ 29} Murray argues the 1971 deed, which set the hours permissible to serve alcohol, revived the prohibition. In 1971, attorney Michael Shagrin acquired as trustee from his client, Pepper Pike Properties, Inc., the Marbella property. He then immediately reconveyed the property back to Pepper Pike Properties, including in the deed restriction that alcoholic beverages would not be sold on the premises between the hours of 11:00 p.m. to 8:00 a.m. This restriction was imposed at the request of the City. Thus, Shagrin acted as a straw man to create the restriction.
 {¶ 30} In 1974, by resolution, the City Council extended the hours, permitting the sale of liquor to 1:00 a.m. during the week and to 2:30 a.m. on weekends. However, these restrictions regarding the sale of alcohol did not specifically reference the restrictions from the 1940 deed. Instead, they constitute new restrictions on the deed.
 {¶ 31} In the alternative, Murray argues the 1971 deed prohibiting the sale of alcoholic beverages from the hours of 11:00 p.m. to 8:00 a.m. should prevail over the newer restrictions, which expanded the hours. Murray contends that in order to implement the newer time frames, pursuant to the language in the 1971 deed, Marbella had to obtain a waiver from attorney Michael Shagrin, the holder of the 1971 deed. We disagree.
 {¶ 32} Murray does not have standing to contest the waiver issue because it does not own the restaurant property. The restrictions do not apply to Murray's property. In fact, Murray's complaint does not request that the 1971 restrictions be *Page 16 
reimposed. Moreover, the waiver provision in the 1971 deed gives City Council discretion to determine if the restriction should be changed, as the restrictions were placed to benefit the City. The provision states:
 "Grantor reserves the right upon petition by grantee to the City of Pepper Pike, to waive, change or cancel this restriction and limitation by resolution of the Council of the City of Pepper Pike, if, in the judgment of said Council, the development or lack of development warrants the same."[20]
 {¶ 33} The City of Pepper Pike, by resolution, consented to waiving the restriction and modified the hours for the sale of alcohol.
 {¶ 34} Murray also contends the MTA does not extinguish the restriction because in 1964, the VSC issued a Notice of Claim in order to continue the restrictions from the 1940 deed. We are not persuaded.
 {¶ 35} This court addressed a similar situation in Pinkney v.Southwick Invs., L.L.C[21] The Pinkney case also involved VSC restrictions on a parcel of property that the appellants stated were revived by VSC's posting a Notice of Claim. We concluded the notice was not valid because it did not comply with the requirement in R.C. 5301.51(A) that such notice be verified by an oath. We rejected the argument that the notary's signature and seal could be a substitute for the formal swearing to the truth by the affiant. We also held that VSC's corporate seal acknowledging the Shagrin Quit-Claim Deed, May 7, 1971, at p. 2. *Page 17 
Notice of Claim did not negate the express requirement that the Notice of Claim be verified by an oath.
 {¶ 36} Similarly in the instant case, we have the identical language contained in the 1964 Notice of Claim that existed in the notice in thePinkney case. Thus, because the notice does not contain an oath, it is void, and does not operate to extend the restrictions.
 {¶ 37} The trial court also found that the neighborhood in which the property is located has changed substantially, rendering the restriction inapplicable. When the Van Sweringen family imposed the restriction back in 1940, the property was rural. There is no doubt that the area of Chagrin Boulevard now houses many restaurants and other commercial establishments, some of which serve alcohol. Accordingly, Murray's second and third assigned errors are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 18 
MELODY J. STEWART, J., and ANN DYKE, J., CONCUR
[1] Journal Entry, August 1, 2007.
[2] Mitchell v. Lawson Milk Co. (1989), 40 Ohio St.3d 190, 192.
[3] Hanson v. Guernsey Cty. Bd. of Commrs (1992), 65 Ohio St.3d 545,548; Greeley v. Miami Valley Maintenance Contrs. Inc. (1990),49 Ohio St.3d 228; Wickliffe Country Place v. Kovacs, 146 Ohio App.3d 293,2001-Ohio-4302.
[4] Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190; Kennedy v.Heckard, Cuyahoga App. No. 80234, 2002-Ohio-6817.
[5] State ex. rel. Drake v. Athens Cty. Bd. of Elections (1988),39 Ohio St.3d 40.
[6] McGlone v. Grimshaw (1993), 86 Ohio App.3d 279, citing Athens Cty.Bd. of Elections (1988), 39 Ohio St.3d 40.
[7] Ameigh v. Baycliffs Corp. (1998), 127 Ohio App.3d 254, 261;Lang v. Westlake (Nov. 19, 1987), Cuyahoga App. No. 52962.
[8] (1955), 162 Ohio St. 521.
[9] Id. at paragraph one of the syllabus.
[10] (1995), 73 Ohio St.3d 379.
[11] (1987), 31 Ohio St.3d 260.
[12] Id. at 383-384.
[13] Johnson v. United Enterprises, Inc. (1957), 166 Ohio St. 149
(relied on provisional exception that no longer exists in R.C. 2505.03);Matter v. Rittenger (Aug. 26, 1988), 4th Dist. No. 1385 (decided prior to Grava); Hupp v. Kirk (July 14, 1995), 4th Dist. No. 94CA2040 (relied on the decision ofMatter v. Rittenger, which was decided prior to Grava); Adams v.Winters (Sept. 26, 1997), 11th Dist. No. 96-G-2016 (neighbors did not participate in administrative process; involved zoning inspector enforcing zoning ordinance prohibiting the activity by homeowner); City of Westlake v. Rice (1995), 100 Ohio App.3d 438
(decided prior to Grava; involved action by municipality that had prevailed against property owners and sought injunction to enforce prior judgments); McFarland v. Beaver Township (1967), 9 Ohio App.2d 57
(adjoining landowners did not participate in administrative process).
[14] Minnich v. Guernsey Sav. Loan Assn. (1987), 36 Ohio App.3d 54,55, citing Hausser Van Aken, Ohio Real Estate Law and Practice (1985), T 7.02. See, also Semachko v. Hopko (1973), 35 Ohio App.2d 205,209.
[15] Minnich, supra. See, also, Semachko, supra.
[16] R.C. 5301.47(E).
[17] Semachko, supra.
[18] Id. at 210.
[19] Pinkney v. Southwick, Cuyahoga App. Nos. 85074 and 85075,2005-Ohio-4167.
[20] Shagrin Quit-Claim Deed, May 7, 1971, at p. 2.
[21] Id. *Page 1