[Cite as *David v. Paulsen*, 2019-Ohio-2146.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Thomas P. David, et al.                     Court of Appeals No. OT-18-032

    Appellants                             Trial Court No. 16CV367

v.

Nancy L. Paulsen, et al.                    **DECISION AND JUDGMENT**

    Appellees                              Decided:  May 31, 2019

* * * * *

Jerome R. Parker, Bruce S. Schoenberger and Ali A. Nour,
for appellants.

John A. Coppeler, for appellees.

* * * * *

**MAYLE, P.J.**

{¶ 1} Plaintiffs-appellants, Thomas P. David and Larry D. Sanders, appeal the January 23, 2019 judgment of the Ottawa County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Catherine A. Moore and Olen D. Moore.  For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} Thomas P. David and Larry D. Sanders claim that they are the two members of the building committee established for Woodland Estates subdivision in Clay Township, Ottawa County, Ohio.[1] Catherine A. Moore and Olen D. Moore ("the Moores") currently hold title to Lot 10 in that subdivision. The Moores erected a shed on their property, allegedly in violation of restrictions contained within a Declaration of Restrictions ("restrictions") filed with the county's deed records, purporting to encumber all lots within the subdivision. The Moores did this without first seeking the approval of the building committee. David and Sanders advised the Moores on October 16, 2016, to remove the shed, but they failed to do so.

{¶ 3} David and Sanders filed a complaint against Nancy Paulsen, Catherine Moore, and Carol Quillet, on December 14, 2016, alleging that they violated Woodland Estates' restrictions and requesting that the trial court order them to remove the shed from their property. The Moores answered and counterclaimed, and moved to substitute party defendants, indicating that Paulsen is deceased and Quillet transferred her 50 percent ownership interest to Olen Moore. The Moores maintained that they lacked notice of the restrictions and that David and Sanders are not authorized to file suit to enforce the restrictions. They also claimed that the restrictions are vague and have not been enforced uniformly.

---

[1] The parties dispute whether Sanders was properly appointed to the committee.

2.

{¶ 4} David and Sanders and the Moores filed cross-motions for summary judgment. David and Sanders argued that (1) the Moores violated the restrictions when they erected the storage shed; (2) they had notice of the restrictions because the restrictions and amended restrictions were filed with the Ottawa County Recorder's office; and (3) their deed to the property made reference to "restrictions of record."

{¶ 5} The Moores argued that the restrictions are unenforceable because they were not part of the subdivision plat, have never been properly referenced in any deed or transfer of title to the property, and are extinguished under Ohio's Marketable Title Act ("MTA"). They maintained that numerous violations of the restrictions have rendered them unenforceable, and they insisted that the subdivision has no properly-appointed building committee that may enforce the restrictions.

{¶ 6} The trial court granted summary judgment to the Moores and denied summary judgment to David and Sanders. It held that the restrictions are not noted on the plat for the subdivision or referenced in the deeds and transfers of Lot 10 dating back through 1969, therefore, they have been extinguished by the MTA. David and Sanders appealed and assign the following errors for our review:

> First Assignment of Error: The Trial Court Committed Reversible Error in Finding That Ohio's Marketable Title Act, R.C. 5301.47 to 5301.56, Extinguished That Certain Declaration of Restrictions ("Declaration") Recorded at the Ottawa County, Ohio Deed Records on July 30, 1964 at Vol. 11 Pg. 353, as Thereafter Amended on July 30, 1968

3.

("Amendment"), Both Referencing Woodland Estates, a Sub-Division in Clay Township, Ottawa County, Ohio.

Second Assignment of Error: The Declaration Contains a Self-Perpetuating Renewal Provision Which Avoids the Applicability of Ohio's Marketable Title Act ("Act") and the Trial Court Ignored Its Existence and Effect.

## II. Standard of Review

{¶ 7} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

*Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 8} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526

4.

N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826, 675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III. Law and Analysis

{¶ 9} David and Sanders argue in their first assignment of error that the trial court erred when it concluded that the restrictions were extinguished under the MTA. In their second assignment of error, they argue that the trial court erred by failing to recognize that the Declaration of Restrictions includes a self-perpetuating provision rendering the MTA inapplicable.

### A. First Assignment of Error

{¶ 10} In support of their first assignment of error, David and Sanders claim that in finding that the restrictions were extinguished under the MTA, the trial court used the wrong deed to determine the "root of title." The Moores maintain that David and Sanders

5.

seek to apply an incorrect date from which to determine marketability of title for purposes of establishing root of title, and that, in doing so, they rely on evidence not contained in the trial court record.

{¶ 11} The MTA is codified in R.C. 5301.47 through 5301.63. It was enacted "to simplify and facilitate land title transactions by allowing persons to rely on a record chain of title * * *." *Semachko v. Hopko*, 35 Ohio App.2d 205, 209, 301 N.E.2d 560, 563 (8th Dist.1973), citing R.C. 5301.55. The MTA provides that "[a]ny person * * * who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest *  * * subject to the matters stated in [R.C.] 5301.49 * * *." R.C. 5301.48.

{¶ 12} "Marketable record title" is defined by the MTA to mean "a title of record, as indicated in section 5301.48 of the Revised Code, which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 5301.50 of the Revised Code." R.C. 5301.47(A). "Root of title" is "that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E).

{¶ 13} "[I]n order to preserve an interest in land in existence before the root of title[,] such interest must be specifically stated or identified in the root of title or specifically stated or identified in one of the muniments of the chain of record title within

6.

forty years after the root of title, or be recorded pursuant to R.C. 5301.51 and 5301.52 within forty years after the root of title." *Semachko* at 211. This is true where, as here, the interest at issue is a subdivision use restriction. *Id.* at 211-12. A general reference in a deed of title indicating that title is subject to easements and restrictions of record is inadequate to preserve a restriction. *Id.* at 210, citing R.C. 5301.51(A). Rather, the statute requires specific identification of the recording of any such restrictions. *Id.*

{¶ 14} Here, the Declaration of Restrictions for the Woodland Estates subdivision was recorded with the Ottawa County Recorder at volume 11, page 353, on February 18, 1964. An amendment was recorded at volume 12, page 133, on July 30, 1968. According to the title documents that were properly made part of the record in this case, the following transfers took place with respect to Lot 10, none of which specifically reference the restrictions:

- May 13, 1969: The Estate of Robert Cashen transferred title to Lot 10 to Edna Cashen, recorded at volume 242, page 168.

- September 19, 1972: Edna Cashen transferred title to Lot 10 to Blue Ridge Homes, Inc., recorded at volume 254, page 776.

- July 3, 1973: Blue Ridge transferred title to Lot 10 to Eugene and Nancy Paulsen, recorded at volume 257, page 064.

- February 9, 2009: Nancy Paulsen acquired title to Lot 10, recorded at volume 1262, page 674, following the death of her husband.

7.

- February 9, 2009: Nancy Paulsen quitclaimed Lot 10 to her daughters, Catherine Moore and Carol Quillet, recorded at volume 1262, page 676, but maintained a life estate.

- February 17, 2017: Catherine Moore and Carol Quillet quitclaimed Lot 10 to Catherine Moore and Olen Moore, recorded at volume 1622, page 187.

{¶ 15} Our initial task in resolving David and Sanders's first assignment of error is to identify the root of the Moores' title. This requires us to establish (1) "the time when marketability is being determined"; and (2) which "title transaction" was "the most recent to be recorded" as of a date 40 years before that time.

{¶ 16} David and Sanders argue that the time when marketability is being determined is February 9, 2009—when Paulsen quitclaimed the lot to her two daughters. David and Sanders explain that using February 9, 2009, as the start date, we must look back 40 years—to February 9, 1969—and consider the transfer that took place most recently before that date. They argue that the deed recorded most recently before that date was an October 8, 1963 deed, pursuant to which Arthur C. James and Isabelle E. James transferred title to this lot to Robert Cashen. They claim that because the restrictions and the amendment were filed after this October 8, 1963 transaction, "they are both not extinguished under the Act because they were recorded AFTER the James Deed and fall within Appellees' unbroken chain of title."

{¶ 17} The Moores point out that the James deed does not appear in the trial-court record and may not be considered, and they argue that even if it did, the time when

8.

marketability is being determined is the date that David and Sanders filed their summary-judgment motion—not the date that Paulsen quitclaimed the property to her daughters. Their motion was filed February 20, 2018. Looking back 40 years, the most recent title transaction before February 20, 1978, occurred on July 3, 1973, when Blue Ridge transferred title to Lot 10 to Eugene and Nancy Paulsen. Because the restrictions did not appear in this title transaction or in any conveyance or title transaction following July 3, 1973, the Moores insist that the MTA extinguishes the restrictions.

{¶ 18} David and Sanders rely on the Ohio Supreme Court's decision in *Heifner v. Bradford*, 4 Ohio St.3d 49, 446 N.E.2d 440 (1983), in support of their argument that "the time when marketability is being determined" is the date the property was conveyed to Moore and Quillet. In *Heifner*, the court specified which deeds served as the roots of title for each party, but it provided no analysis from which we may conclude that it used a conveyance date—as opposed to the trial date or some other date—as the time when marketability was being determined. David and Sanders acknowledge that this issue was not analyzed in *Heifner*. Given the absence of analysis, we decline to draw any inferences from the decision in this regard.

{¶ 19} The Moores rely on *Semachko*, 35 Ohio App.2d at 211-12, 301 N.E.2d 560, in support of their position that "the time when marketability is being determined" is the date that David and Sanders filed their summary-judgment motion. In *Semachko*, the trial court found that marketability was being determined as of the trial date. We, however, find this approach to be problematic. By using the trial date as the starting

point for the marketability determination, the root of title could potentially change while the case is pending before the trial court. Defendant-property owners would therefore have an incentive to strategically delay the proceedings in the hopes of extinguishing the plaintiff's superior claim before trial.

{¶ 20} We think it more appropriate to determine marketability as of the date that David and Sanders sought to enforce a purportedly-superior right to the property-which, in this case, was the date that they filed an action to enforce the Declaration of Restrictions against the Moores.[2] David and Sanders filed the complaint on December 14, 2016. Forty years before this date would be December 14, 1976. The July 3, 1973 conveyance of Lot 10 from Blue Ridge to Eugene and Nancy Paulsen is the most recent title transaction before December 14, 1976, and is therefore the root of title.

{¶ 21} The restrictions are not specifically stated or identified in the deed recorded on July 3, 1973, or in one of the muniments of the chain of record title within forty years after the root of title. There is also no evidence that the restrictions were recorded pursuant to R.C. 5301.51 and 5301.52 within forty years after the July 3, 1973 title

---

[2] This is consistent with the position taken in a number of other jurisdictions. *See, e.g., Nature Conservancy of Connecticut, Inc. v. Three Feathers, LLC*, Super.Ct. No. FST CV 10 6003509 S, 2013 Conn. Super. LEXIS 3052, *24 (Apr. 3, 2013), fn. 12 ("[T]he date of marketability is when a party seeks to determine the superiority of their claimed title."). *See also Heath v. Turner*, 308 S.E.2d 244, 250 (N.C.1983) (using date action was commenced as the time when marketability was being determined); *Rocket Oil & Gas Co. v. Donabar*, 127 P.3d 625, 632 (Okla.2005) (explaining that "the time when marketability is being determined," was the date plaintiffs filed quiet title action).

10.

transaction. Accordingly, to the extent that the restrictions were referenced in any title transactions that occurred before the root of title, they would have been extinguished by the MTA.

{¶ 22} Here, the evidence indicates that none of the title transactions—either before or after the root of title—reference the restrictions. According to an affidavit of a title agent attached to the Moores' summary-judgment motion, the restrictions are also not referenced on the plat for the subdivision or incorporated into the deeds. And the Moores made clear via affidavit and deposition testimony that they were unaware of the restrictions until David and Sanders filed suit.

{¶ 23} "A court of equity will enforce the observance of valid restrictive covenants as to the use of property against a grantee who has notice of such covenants." *Carranor Woods Prop. Owners' Assn. v. Driscoll*, 106 Ohio App. 95, 99, 153 N.E.2d 681 (6th Dist.1957). "[A] grantee in a conveyance of land is deemed to have notice of restrictive covenants when such covenants have been inserted in his deed, or where it clearly appears that a plan of uniform development of an allotment with restrictive covenants had been adopted by the filing and recording of a declaration of reservations and restrictions incident to the platting, accompanied by substantially uniform compliance with such restrictions or standards." *Id.* Notice—either actual or constructive—"is essential for enforcement." *Id.*

{¶ 24} Because the restrictions are not identified in the deeds to the property or referenced in the subdivision plat, and because the record evidence indicates that the

11.

Moores were unaware of the restrictions, we must conclude that they lacked either actual or constructive notice and the restrictions may not be enforced against them. Thus, even if the date for determining marketability of title was earlier, as David and Sanders argue, the result here would be the same. Either way, the restrictions cannot be enforced against the Moores in this case.

{¶ 25} Accordingly, we find David and Sanders's first assignment of error not well-taken.

## B. Second Assignment of Error

{¶ 26} In their second assignment of error, David and Sanders argue that the Declaration of Restrictions contains a self-perpetuating renewal provision preventing the MTA from extinguishing the restrictions. That provision states, in pertinent part:

> 27. TERM. These covenants and restrictions are to run with the land and shall be binding on the above named persons and all persons claiming under or through them until the First day of October, A.D., 1989, at which time said covenants and restrictions shall be automatically extended for successive ten (10) years by a [m]ajority of the then owners of said lots, it is agreed to change such restrictions and covenants in whole or in part.

{¶ 27} The Moores claim that (1) David and Sanders waived this argument by failing to raise it in the trial court, and (2) the argument lacks any legal basis. They further contend that the Moores lacked actual notice of the restrictions, and because the

12.

restrictions were never in the chain of title for Lot 10, they also lacked constructive notice of the restrictions.

{¶ 28} We agree with the Moores that this argument was not raised below and, therefore, has been waived. We also agree with them that there is no legal authority for David and Sanders's position. And given our previous conclusion that the Moores lacked actual or constructive notice of the restrictions, they cannot be enforced against them, regardless of the purported "self-perpetuation" provision.

{¶ 29} Accordingly, we find David and Sanders's second assignment of error not well-taken.

## IV. Conclusion

{¶ 30} We conclude that the subdivision restrictions are not specifically identified in the Moores' root of title, in the muniments of record chain of title, or recorded in accordance with R.C. 5301.51 and 5301.52, and are, therefore, extinguished. We further conclude that the Moores lacked actual or constructive notice of the restrictions because they were not identified in the deeds to the property or referenced in the subdivision plat, thus they cannot be enforced against them regardless of the purported "self-perpetuation" provision. We, therefore, find David and Sanders's two assignments of error not well-taken. We affirm the January 23, 2019 judgment of the Ottawa County Court of Common Pleas. David and Sanders are ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____

                                                    JUDGE

Thomas J. Osowik, J.           

                                           _____

Christine E. Mayle, P.J.                                          JUDGE
CONCUR.

                                           _____

                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.